**[Cite as *In re R.M.*, 2018-Ohio-395.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF: R.M. Jr. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| (D.O.B. 10-1-14) | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J.　　: |
| | : | |
| | : | Case No. CT2017-0057 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:　　　Appeal from the Court of Common
Pleas, Juvenile Division, Case No.
21530130


JUDGMENT:　　　Affirmed


DATE OF JUDGMENT:　　　January 31, 2018


APPEARANCES:

For Plaintiff-Appellee　　　　　　　　For Appellant-Mother

GERALD V. ANDERSON　　　　　　VALERIE WIGGINS
Assistant Prosecuting Attorney　　　107 S. Main Street
27 North Fifth Street　　　　　　New Lexington, OH  43764
P. O. Box 189
Zanesville, OH  43702　　　　　　For Father, Robert Moody, Sr.


Guardian Ad Litem　　　　　　KEVIN VAN HORN
　　　　　　　　　715 Adair Avenue
BARBARA CAFFARATTI　　　　　Zanesville, OH  43701
45 N. 4th Street
P. O. Box 124
Zanesville, OH 43601

*Wise, Earle, J.*

{¶ 1}   R.M. Jr. (child) was born on October 1, 2014 to appellant, Angela Pemberton and Robert Moody (father). On August 1, 2015, by ex-parte order, child was placed in the temporary custody of Muskingum County Children's Services (MCCS). He was placed with foster parent Shawna Duffy until April 7, 2016. The child was then placed with a family member, Heather Price, with protective supervision by MCCS. On July 25, 2016, however, Price advised MCCS she could no longer care for child. Temporary custody of child was returned to MCCS, and he was returned to Duffy's home.

{¶ 2}   Appellant and father each filed motions for legal custody on January 26, 2017 and February 14, 2017 respectively. On March 8, 2017, MCCS filed a motion for permanent custody. A hearing was scheduled on the matter for April 17, 2017. Neither appellant nor father were present. The hearing was converted to a review hearing with a final hearing scheduled for May 30, 2017.

{¶ 3}   When appellant failed to appear at the May 30, 2017 hearing, counsel for appellant requested a continuance. Counsel stated she'd had no contact with appellant since February 2017 despite sending letters and leaving voice mails asking appellant to contact her. The state, representing MCCS, requested the trial court to proceed, as all of its subpoenaed witnesses were present and waiting to testify.

{¶ 4}   The state further advised the court of its knowledge that appellant had been arrested the day before and asked that she be transported from the jail for the hearing. It was then discovered, however, that appellant had been taken from the jail to the hospital because she was unresponsive, thus rendering her unavailable for the hearing.

{¶ 5}   With that discovery, the trial court withheld ruling on the motion to continue in order to hear testimony from the witnesses present and then determine if a further continuance would be in the best interest of the child and of benefit to appellant to protect her rights. In permitting the state to go forward with its witnesses, the trial court noted a scheduling concern. The two-year sunset date on the case was August 5, 2017. This matter required a half day, and that as of that date, cases requiring half a day were being scheduled into September and October.

{¶ 6}   The state presented testimony from four witnesses which established the following:

{¶ 7}   When MCCS became involved in this matter, MCCS caseworker Renee Kimball formulated a case plan for both appellant and father. Appellant has a long history of both substance abuse and involvement with MCCS as an alleged perpetrator. She has lost custody of three other children through previous MCCS cases due to substance abuse issues, mental health issues, and criminal history. Appellant's case plan thus included mental health counseling, substance abuse treatment, and domestic violence counseling. Appellant failed to complete treatment or counseling, had numerous positive urine drug screens and failed to provide urine drug screens as directed on numerous other occasions.

{¶ 8}   In order for appellant to start either mental health or substance abuse counseling again, she first needed to complete 30 AA or NA meetings in 30 days. Appellant made no move to do so. Appellant was further deemed in need of at least 120 days of residential substance abuse treatment if she chose to complete the 30 meetings in 30 days and return to the program.

{¶ 9}   Appellant failed to attend supervised visits with her child for the first year the case was active, and avoided MCCS during that time as well. Thereafter, she attended supervised visits from September 2016 to February 2, 2017 before abandoning the child once again. On those occasions when appellant did visit, she had no observable bond with the child, and father did all the parenting. Appellant arrived late to visits and left several times during visits to smoke or get food.

{¶ 10} For the majority of this case, the child remained with Duffy, his foster mother. From April 7, 2016 to July 25, 2016, a kinship placement was attempted with a cousin, Heather Price. Price concluded, however, that she was not is a position to care for the child and he was returned to Duffy.

{¶ 11} Placement was considered with father's sister, however she declined due to her advanced age, her husband's health issues, and the fact that she cares for her adult son who is mentally handicapped. Placement was also considered with appellant's mother who had custody of appellant's other three children, but she passed away during the pendency of this case. At some point appellant advised Kimball that she had another family member in mind to place the child with, but then refused to provide a name or contact information.

{¶ 12} On August 15, 2016, appellant was arrested for possession of cocaine. That matter remained pending at the time of the permanent custody hearing. During the weekend before the hearing, appellant assaulted father, breaking his nose and eye socket. Father did not report the matter to law enforcement. On the day before the hearing, appellant was arrested for falsification, theft, and possession of drugs. Appellant further had two active bench warrants for child support.

{¶ 13} In considering appellant's motion for a continuance, the trial court asked Kimball if the court were to grant a continuance, would appellant have adequate time to engage in her case plan in any meaningful way so as to allow her an opportunity to parent the child. Kimball did not believe that was a possibility.

{¶ 14} Father testified on his own behalf, and withdrew his motion for legal custody. He is unable to care for child, did not oppose the permanent custody motion, and believed it was in child's best interest to remain in Duffy's home.

{¶ 15} Duffy testified in father's case as well and expressed her interest in adopting the child if permanent custody were granted to MCCS.

{¶ 16} At the conclusion of the hearing, appellant's motion for a continuance was denied. On August 7, 2017, the trial court issued its judgment entry awarding permanent custody of child to MCCS.

{¶ 17} Appellant now appeals that decision. She presents two assignments of error:

I

{¶ 18} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT A REASONABLE CONTINUANCE TO THE APPELLANT FOR CAUSE."

II

{¶ 19} "THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY TO THE AGENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 20} In her first assignment of error, appellant argues that the trial court abused its discretion when it denied her motion to continue the permanent custody hearing. Specifically, appellant argues the matter should have been continued because she was unavailable due to being hospitalized and unresponsive.

{¶ 21} Appellant's second assignment of error states the grant of permanent custody to MCCS is against the manifest weight of the evidence. The argument following the assignment of error, however, contends the denial of a continuance was against the manifest weight of the evidence. Specifically, appellant argues that the denial of a continuance was not in the best interest of the child, and the possibility of a kinship placement with the unnamed family member should have been explored. Because appellant's first and second assignments of error argue that a continuance should have been granted, and because manifest weight standards are not the proper standard of review for a denial of a motion to continue, we address assignments of error one and two together.

{¶ 22} The grant or denial of a continuance rests in the trial court's sound discretion. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981) syllabus. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case,

particularly in the reasons presented to the trial judge at the time the request is denied."
*Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 1 L.Ed.2d 921 (1964).

{¶ 23} We recognize that a parent has a fundamental liberty interest in the care, custody, and management of his or her child and an essential and basic civil right to raise his or her children. *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990). That right, however, is not absolute. "The natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 24} To determine whether a trial court abused its discretion in denying a motion for a continuance, we consider the following factors: 1) the length of the delay requested; 2) whether other continuances have been requested and received; 3) the inconvenience to witnesses, opposing counsel, and the court; 4) whether there is a legitimate reason for the continuance; 5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and 6) other relevant factors, depending on the unique facts of each case. *In re P.T.*, 5th Dist. Stark No. 2011CA00200, 2012-Ohio-1287, ¶ 17, citing *State v. Unger* 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981); *State v. Holmes*, 36 Ohio App.3d 44, 47-48, 521 N.E.2d 479 (1987).

{¶ 25} First, the length of delay requested here is not entirely clear. Appellant argues here that one day would have been sufficient. During the permanent custody hearing, however, counsel for appellant asked the court for an opportunity to speak with appellant now that she was aware of her location but proposed no timeframe. T. 4-5. Later, during cross examination of Angela Hittle, appellant's substance abuse counselor, counsel for appellant inquired at T. 38-39:

[Counsel] Should this matter be set out approximately 60 days, do you

believe that [appellant] would be able to get into a program that would be

adequate to get her addiction at least partially under control?

[Hittle] I can't answer that. I haven't seen her since 2016.

[Counsel] Would it be possible – what would she need to do to get into your

program as of right now that you –

[Hittle] She would have to complete a residential program of 120 or more

days –

* * *

And do 30 meetings in 30 days.

{¶ 26} As we will address in more detail below, one day or 60 days would have made no difference in this matter. Under the first *Unger* factor, therefore, we find the trial court properly denied appellant's motion for continuance.

{¶ 27} As for the second *Unger* factor, the record does not reflect any prior continuances, weighing in favor of appellant. Considering the third Unger factor, inconvenience to witnesses, opposing counsel, and the court, opposing counsel was permitted to present testimony from the witnesses present, also weighing in favor of appellant.

{¶ 28} As for the fourth and fifth *Unger* factors, whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, and whether appellant contributed to the circumstances which give rise to the request for continuance, the trial

court properly denied appellant's motion for continuance. Although counsel for appellant presented the court with a legitimate reason for requesting the continuance -- because appellant was incarcerated and further had been taken from the jail to the hospital unresponsive -- appellant also contributed at least partially to the circumstances giving rise to the request for continuance by committing new crimes the day before the hearing, and failing to contact her attorney despite counsel's attempts to contact her. As the trial court noted, appellant had been in very recent contact with father, and with MCCS requesting to visit with her child again. T. 124-125. Appellant could have made contact with her attorney as well.

{¶ 29} Regardless of the forgoing, however, the sixth *Unger* factor is ultimately dispositive in this matter. Whether the requested delay was one day or 60 days, were there no prior continuances or many, and regardless of the reason giving rise to the request for continuance, under the circumstances of this case a continuance would not have changed the outcome.

{¶ 30} First, appellant was facing the potential of incarceration for 60 days for two child support bench warrants as well as in two pending criminal cases. T. 78, 115. Next, appellant was unsuccessfully terminated from substance abuse and mental health counseling. In order to resume either, appellant would first need to complete 30 AA/NA meeting in 30 days. She would then need at least 120 days of inpatient substance abuse treatment. T. 37, 39, 74-75. Even if appellant served no jail or prison time, she still was facing a minimum of 150 days of substance abuse treatment.

{¶ 31} Finally, appellant's child was three-years-old at the time of the permanent custody hearing and MCCS had been involved with him for two and a half years. T. 79.

Appellant had nearly two years to comply with the objectives of her case plan. Instead, she chose not to work the plan for more than a year, and when she finally did, failed to comply with a single directive, continued to abuse illegal substances, failed to obtain domestic violence counseling and assaulted father, abandoned her child, and was arrested for several crimes including crimes committed the day before the permanent custody hearing. T. 109-117. This is the fourth child appellant has failed to parent. T. 104. As for appellant's kinship argument, while appellant told Kimball she had a family member in mind who could possibly take the child in, she refused to provide Kimball with this alleged person's information. T. 121. Obviously MCCS cannot investigate a potential placement without knowing who to contact.

{¶ 32} Given these facts, if the trial court had granted a continuance of one day or 60 days, appellant still could not demonstrate substantial or meaningful compliance with her case plan in order to persuade the trial court that it is within the child's best interest to return custody to appellant. *In re J.E.*, 3rd Dist. Marion No. 9-17-07, 2017-Ohio-8272, 2011 WL 553173, ¶ 17, *In re J.C.*, 10th Dist. Franklin No. 10AP-766, 2011-Ohio-715 ¶ 45.

{¶ 33} Upon review of the record and in light of the guidelines set forth in *Unger*, we find no abuse of discretion in the trial court's denial of appellant's request to continue the permanent custody hearing.

{¶ 34} Appellant's first and second assignments of error are overruled.

By Wise, Earle, J.

Delaney, P.J. and

Gwin, J. concur.

EEW/rw