[Cite as *In re A.W.*, 2024-Ohio-5791.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: A.W. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 2024 CA 0057 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
Court of Common Pleas, Juvenile
Division, Case No. 2021 DEP 00200

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     December 10, 2024

APPEARANCES:

For Plaintiff-Appellee

SARAH E. EXTEN
Richland County Children's Services
731 Scholl Road
Mansfield, Ohio 44907

For Defendant-Appellant Father

BYRON CORLEY
3 North Main Street, Suite 602
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1}    Appellant T.W., biological father of minor child A.W., appeals the decision of the Richland County Court of Common Pleas, Juvenile Division awarding permanent custody of A.W. to appellee Richland County Children Services Board.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    A.W. was born on May 12, 2020, to mother, S.W., and father, appellant T.W.[1] A.W. was placed in emergency shelter care on November 4, 2021. A proceeding was held the following day resulting in continuation of the order, and a complaint was filed alleging that A.W. was a dependent child. On December 16, 2021, T.W. admitted to the status of A.W. as "dependent." A dispositional hearing was held on February 16, 2022, during which the appellant, who had been conveyed to said hearing from the Richland County Jail in order to attend the hearing with his counsel, agreed to the placement of A.W. into the temporary custody of the appellee.

{¶3}    The appellant's problems underlying the finding of dependency included mental health problems; exposing A.W. to criminal activity; substance abuse and other harmful behaviors; A.W.'s need for healthcare; and, a need for parenting skills. The appellee filed a case plan in response to these presenting issues, which was approved and adopted by the trial court in a February 25, 2022, Judgment Entry.

{¶4}    While the appellant did attempt to engage in some of the objectives of the case plan some of the time, and did briefly after much delay show some progress, overall he demonstrated an inability to sustain any such progress, resorting to the use of illegal

---

[1] The minor child's mother, S.W., had appealed the trial court's decision granting permanent custody of A.W. to the Richland County Children Services Board in a separate appellate proceeding.

substances including cocaine and marijuana, and otherwise failing to successfully complete the objectives of the case plan. The appellant underwent drug testing; some tests were negative, but others were positive for marijuana and/or cocaine. The appellant also abused alcohol, and while he had some intervals of sobriety, he vacillated between sobriety and relapse. The appellant had numerous positive drug screenings during the course of the case plan.

**{¶5}** On November 1, 2023, the appellee filed a dispositional request that all residual parental rights of the appellant be terminated, and that permanent custody be granted to the appellee. Even after this filing, the appellant continued to test positive for cocaine and marijuana, testing positive for said substances in a sample collected on November 6, 2023.

**{¶6}** A dispositional hearing took place on February 12, 2024, during which the trial court heard testimony from the appellant; A.W.'s biological mother S.W.; Dr. Aimee Thomas, licensed psychologist and licensed professional clinical counselor with Lighthouse Family Center; Matthew Levitas, forensic toxicologist and certified scientist with Forensic Fluid Laboratories; Kristi Spangler, caseworker with the appellee; A.F., A.W.'s foster mother; and, Michelle Vitello, CASA/GAL.

**{¶7}** Dr. Thomas testified that the appellant underwent an evaluation with her in order to assess his ability to safely and competently parent A.W. The appellant was diagnosed with, inter alia, paranoid personality disorder, other specific depressive disorder, and cannabis use disorder. He demonstrated a pattern of denying responsibility and minimization of concerns with regard to A.W.'s dependency status during his interview with Dr. Thomas. She observed that many of the appellant's behaviors were consistent with those seen in abusive relationships meant to isolate an intimate partner.

He demonstrated a "strident unwillingness" to accept responsibility for his violent actions towards his wife, A.W.'s mother; he denied that his violent actions contributed to the appellee's involvement and eventual removal of his child; and, he denied the use of cocaine and other illicit drugs. Dr. Thomas recommended that he engage in comprehensive mental health services specifically addressing his particular mental health issues. However, he failed do so. Dr. Thomas noted that the appellant's prognosis was poor given his unwillingness to accept personal responsibility, his placement of blame onto other people, and his lack of motivation to engage in any services and/or address the issues identified by Dr. Thomas. He simply refused to acknowledge any personal responsibility for his actions or demonstrate a desire or willingness to remedy the issues which lead to the removal of A.W. from the home.

{¶8} Case worker Spangler also testified. While the appellant eventually began to engage in some services during the course of the case, he never accessed those services which would have provided the intensity of intervention necessary as recommended in Lighthouse Family Center's  evaluation and report. The appellant continually asserted that counseling was a waste of his time, and persisted in engaging in bizarre behaviors. For example, he wore contact lenses which made his eyes appear a satanic red, on one occasion appearing at A.W.'s daycare wearing the red contact lenses and a mask, alarming daycare personnel and scaring the children.

{¶9} A.W.'s foster mother Alyssa Fredericks testified that when A.W. was placed in her home at approximately eighteen months of age, she appeared to be developmentally delayed, and was non-verbal and mostly devoid of emotion. She was non-responsive to her name, showed no interest in age-appropriate toys, did not interact with the other children in the home, and had the appearance of "a blank little girl." She

was demonstrably fearful of men, and reacted very fearfully to raised voices. She was unfamiliar with table food and would only consume a bottle containing PediaSure mixed with baby food. She was unfamiliar with a spoon and would suck on rather than chew food. She was in the foster home for eight months before she would consume foods with a spoon. She was referred to and received occupational, physical and speech therapy, including food/eating therapy.

{¶10} Efforts at reunification were undertaken, and A.W. was reunified with her parents for two consecutive thirty-day trial home visits. However, both parents tested positive for cocaine and marijuana, and A.W. was again removed and placed in foster care. A specimen was taken from A.W. upon her October, 2023 removal from her parent's home, the results of which were positive for marijuana.

{¶11} On March 26, 2024, the magistrate granted the appellee's dispositional request, noting that, inter alia, A.W. was thriving in her foster placement, and that no suitable relatives or next of kin who might be appropriate and available to care for A.W. could be identified. The appellant filed a timely objection to the Magistrate's Decision. The trial court overruled the appellant's objection and approved the Magistrate's Decision in a Judgment Entry dated July 31, 2024.

{¶12} The appellant filed a timely appeal in which he sets forth the following sole assignment of error:

{¶13} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF A.W. TO THE RICHLAND COUNTY CHILDREN SERVICES BOARD RCCSB PREMISED UPON RCCSB FAILURE TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN A.W.'S BEST INTEREST TO GRANT PERMANENT

CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶14}** The appellant submits that the trial court erred when it found by clear and convincing evidence that grounds existed for an award of permanent custody of A.W. to the appellee and that it was in A.W.'s best interest to award permanent custody to the appellee. We disagree.

## STANDARD OF REVIEW

**{¶15}** The Ohio Supreme Court recently addressed the standard of review in permanent custody cases in *In re Z.C.*, 2023-Ohio-4703:

> Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

> We have described an appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of

facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

*     *     *

. . . sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*Id.* at ¶7-8, 11.

{¶16} The Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief* " (emphasis sic), *id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when " 'the evidence is legally sufficient

to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 13-14.

**ANALYSIS**

**{¶17}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶18}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and, 2) that any of the following apply:

(a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)      the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B) thus establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the trial court found that A.W. had been in the temporary custody of the appellee for more than twelve months of a twenty-two month period.

{¶19}  The court must also consider all relevant evidence before determining that the children cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re William S.*, 1996-Ohio-182.

{¶20}  R.C. 2151.414(E) provides in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is

so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\*          \*          \*

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

\*          \*          \*

(16) Any other factor the court considers relevant.

**{¶21}** We find there is clear and convincing evidence that, while he made some minimal efforts to engage in the case plan, the appellant failed continuously and repeatedly to substantially remedy the conditions that caused A.W. to be removed from the appellant's home. Further, we find there is clear and convincing evidence that the appellant's mental health and chemical dependency was so severe that it rendered him unable to provide an adequate permanent home for A.W. Finally, we find there is clear and convincing evidence that the appellant placed A.W. at substantial risk of harm two or more times due to alcohol or drug abuse, and had rejected treatment two or more times or refused to participate in further treatment two or more times after the case plan was

journalized. In fact, not only did the appellant refuse to take responsibility for his actions in this case and engage in necessary services, including substance abuse treatment, the last time A.W. was removed from the appellant's care she tested positive for marijuana. We therefore find the appellant's assignment of error to be without merit.

## CONCLUSION

{¶22} Based upon the foregoing, we find that the trial court's decision to award permanent custody of A.W. to appellee Richland County Children Services was warranted, was in A.W.'s best interest, was based upon competent, credible evidence, and was not against the manifest weight or sufficiency of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellants' assignment of error, and affirm the decision of the Richland County Court of Common Pleas, Juvenile Division.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.