[Cite as *In re A.W.*, 2025-Ohio-853.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| A.W. | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| | : | |
| | : | |
| | : | Case No. 2024CA00060 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 2021 DEP 00200

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            March 12, 2025

APPEARANCES:

For Appellant - Defendant           For Appellee - Plaintiff

BRIAN A. SMITH                      SARAH E. EXTEN
Brian A. Smith Law Firm, LLC        Richland County Children Services
123 South Miller Road, Suite 250    731 Scholl Road
Fairlawn, OH  44333                 Mansfield, OH  44907

*Montgomery, J.*

**{¶1}** Appellant S.W., the biological mother of minor child A.W., appeals the decision of the Richland County Court of Common Pleas, Juvenile Division, awarding permanent custody of A.W. to appellee Richland County Children Services Board ("RCCSB"). For the reasons set forth below, we affirm.

<u>**STATEMENT OF THE FACTS AND THE CASE**</u>

**{¶2}** A.W. was born on May 12, 2020, to mother, S.W. (appellant), and father, T.W. On November 4, 2021, A.W. was placed in emergency shelter care and soon thereafter, RCCSB filed a complaint alleging that A.W. was a dependent child. On December 16, 2021, appellant admitted that A.W. was a "dependent" as defined by the Ohio Revised Code. On February 16, 2022, a hearing took place and appellant consented to granting RCCSB temporary custody of A.W.

**{¶3}** The problems underlying the finding of dependency included appellant's mental health problems, exposing A.W. to criminal activity, domestic violence between appellant and her husband (A.W.'s father), substance abuse and other harmful behaviors, A.W.'s ongoing need for medical care, and appellant's need for parenting skills. RCCSB filed its case plan designed to remedy the underlying problems and attempt reunification. Said plan included appellant engaging in mental health treatment, treatment focused on anger management and domestic violence, treatments for her substance abuse issues, and addressing issues of resource management. The trial court adopted and approved the plan. While appellant eventually tried to accomplish some of the case plan objectives, she ultimately demonstrated an inability to sustain progress over time.

**{¶4}** For example, on January 22, 2022, appellant underwent a psychological evaluation with Dr. Aimee Thomas, a licensed psychologist and licensed professional clinical counselor with Lighthouse Family Center and was diagnosed with Major Depressive Disorder (recurrent and severe), Generalized Anxiety, PTSD, Dependent Personality Disorder, and Cannabis Use Disorder. One of appellant's biggest obstacles was her relationship with her husband, who was violent toward her on numerous occasions.

**{¶5}** Dr. Thomas recommended extensive counseling for appellant as well as intensive additional services. In January 2023, *nearly one year after* Dr. Thomas' recommendations, appellant finally engaged in counseling services with A.W.'s father, through Family Life Counseling. Despite counseling, and despite the violence, appellant remained committed to her husband and continued to minimize the significant concerns that contributed to A.W.'s removal. Importantly, the Magistrate and trial court determined that neither appellant nor her husband ever accessed the more "intense" services available to them, and specifically designed to provide them with the level of intervention recommended in Lighthouse Family Center's evaluation and report.

**{¶6}** Appellant also has a long history of drug abuse, even telling Dr. Thomas that after her discharge from military service she began smoking marijuana all day every day to address physical and emotional pain. The Magistrate found that A.W.'s "parents consistently tested positive for illegal substances for the entire first year this matter pended before the court. [Appellant] submitted to drug screens * * * on seventeen different occasions." See Magistrate's Decision at p.3. Six of those screens were positive for illegal substances – all positive for marijuana and two were also positive for cocaine.

The Magistrate found no evidence that any of the samples were tainted or collected improperly.

{¶7} Although A.W. resided in her foster home from November 1, 2021, through September 5, 2023, as appellant began putting forth some effort to achieve her case plan objectives RCCSB recognized these efforts and increased visitation. In early September 2023, A.W. was even permitted to stay with her parents for two consecutive thirty-day "trial" home visits. However, on October 25, 2023, the agency conducted an unannounced home visit and randomly tested both parents for drug use; both parents tested positive for cocaine and marijuana. A.W. was removed and returned to foster care. On October 31, 2023, A.W. also tested positive for marijuana. The parents claimed they had "no idea" how A.W. could have tested positive.

{¶8} Thereafter, on November 1, 2023, over a year and half since temporary custody was awarded to RCCSB, the agency filed a motion for permanent custody and requested that appellant's parental rights be permanently terminated. Even after this filing, on November 6, 2023, A.W.'s father and appellant tested positive for cocaine and marijuana. Rather than either of the parents taking any responsibility for their drug use, they tried to discredit the validity of the collection and testing process.[1]

{¶9} On February 12, 2024, the permanent custody hearing took place, and the following individuals testified: Dr. Aimee Thomas; Matthew Levitas - forensic toxicologist with Forensic Fluid Laboratories; Kristi Spangler - caseworker with RCCSB; A.W.'s foster mother; and Michelle Vitello - the guardian ad litem ("GAL").

---

[1] A.W.'s father was also subject to the motion for permanent custody. In a companion case, this Court upheld the award of permanent custody of A.W. to RCCSB. See *In re A.W.,* 2024-Ohio-5791 (5th Dist.).

**{¶10}** A.W.'s foster mother testified that when A.W. was placed in her home at approximately 18 months of age, she appeared developmentally delayed, she was nonverbal, and devoid of emotion. She was non-responsive to her name, showed no interest in age-appropriate toys, did not interact with other children in the home, and had the appearance of "a blank little girl." She was demonstrably fearful of men and reacted negatively to raised voices. She was unfamiliar with table food and consumed only a bottle with PediaSure and baby food mixed in. She was unfamiliar with a spoon and would suck on food rather than try to chew it. Based on these observations, the foster mother referred A.W. to occupational, physical and speech therapy, including food/eating therapy. A.W. quickly showed signs of improvement.

**{¶11}** Spangler testified that while appellant did progress with her case plan, she continued to fail at remaining drug free. Indeed, even after the motion for permanent custody was filed on November 2, appellant tested positive for drugs on November 6, 2023. Spangler ultimately concluded that it was in A.W's best interest to award permanent custody to RCCSB. Ms. Vitello, the GAL, investigated the case and filed a report as to her recommendations. Ms. Vitello testified that she believed it was in A.W's best interest to award permanent custody to RCCSB. The toxicologist, Mr. Levitas, testified regarding the process and procedure surrounding the drug test samples and maintained that no improper tainting of said samples occurred. Mr. Levitas was fully cross-examined on this issue. Once the hearing concluded, the Magistrate took the matter under advisement.

**{¶12}** On March 26, 2024, after considering the testimony and evidence, the magistrate granted RCCSB's motion for permanent custody. The Magistrate issued very

detailed findings of fact and conclusions of law.  The appellant timely filed objections to the Magistrate's Decision.  On July 31, 2024, after considering the objections and reviewing the evidence relied upon by the magistrate, the trial court overruled the appellant's objections and approved the Magistrate's Decision in a Judgment Entry. The Entry states "Children Services presented sufficient evidence to grant permanent custody to the Agency and to find that such an order is in the best interests of the child.  All of the specific findings made by the Magistrate are supported by the transcript."  Appellant timely filed this appeal.

## ASSIGNMENTS OF ERROR

{¶13} I.  "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE, RICHLAND COUNTY CHILDREN SERVICES, SINCE APPELLEE FAILED TO DEMONSTRATE, BY CLEAR AND CONVINCING EVIDENCE, THAT GROUNDS EXISTED FOR PERMANENT CUSTODY, AND SINCE THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} II.  THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE, RICHLAND COUNTY CHILDREN SERVICES, SINCE APPELLEE FAILED TO DEMONSTRATE, BY CLEAR AND CONVINCING EVIDENCE, THAT GROUNDS EXISTED FOR PERMANENT CUSTODY, AND SINCE THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶15} III.  THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO APPELLEE, RICHLAND COUNTY CHILDREN SERVICES, BECAUSE THERE WAS NOT COMPETENT, CREDIBLE EVIDENCE THAT APPELLEE MADE "REASONABLE EFFORTS" TO REUNIFY THE FAMILY."

## STANDARD OF REVIEW

{¶16} In the first and second assignments of error, appellant asserts that the judgments of the trial court were against the sufficiency and manifest weight of the evidence.  We disagree.  For ease of argument, the two assignments of error will be addressed together.  A companion case involving A.W.'s father was recently decided by

the Fifth District and is instructive regarding the standard of review in permanent custody cases. See *In re A.W.,* 2024-Ohio-5791, ¶ 15. The Court succinctly stated as follows:

> The Ohio Supreme Court recently addressed the standard of review in permanent custody cases in *In re Z.C.,* 2023-Ohio-4703. Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.
>
> We have described an appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

... sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties. *Z.C.* at ¶7-8, 11.

**{¶17}** The Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief* " (emphasis sic), *id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when " 'the evidence is legally sufficient to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

*In re A.W.,* 2024-Ohio-5791, ¶¶ 15-16, quoting, *Z.C.*, ¶ 13-14.

## Permanent custody

{¶18} "[T]he right to raise a child is an 'essential' and 'basic' civil right.'" *Matter of T.C.,* 2020-Ohio-882, ¶ 35; *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). The Court is mindful that a parent has a fundamental liberty interest in the care, custody, and management of his or her child and an essential and basic civil right to raise his or her children. *In re Murray*, 52 Ohio St.3d 155, 156, (1990). That right, however, is not absolute. "The natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *Matter of R.M., Jr.*, 2018-Ohio-395, ¶ 23 (5th Dist.) quoting, *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶19} As stated, R.C. 2151.414(B)(1) mandates that, prior to granting a motion for permanent custody, the juvenile court must make specific findings by clear and

convincing evidence. *In re T.J.,* 2024-Ohio-110, ¶ 14 (5th Dist.); *In re A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, ¶ 18. First, the court must find "that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies." *Id.* And second, that the grant of permanent custody is in the best interest of the child. *Id.*

**{¶20}** The factors contained in R.C. 2151.414(B)(1) include:

(a)     the child is not abandoned or orphaned, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period * * *.

(e)     The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶21}** For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to R.C. 2151.28 or the date that is sixty days after the removal of the child. Here, there can be no serious dispute the child was in RCCSB's temporary custody for approximately twenty-one (21) months, well beyond the required 12 or more

months of a consecutive twenty-two-month period. RCCSB sought and obtained temporary custody on February 16, 2022, and filed for permanent custody on November 1, 2023.[2] Thus, the first prong of R.C. 2151.414(B) is met and the court proceeds to a determination of best interest. *N.B.,* ¶¶ 18-20.

**{¶22}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶23}** The court must consider each factor in R.C. 2151.414(D), and any other relevant factors, and no one factor is given greater weight than the others. *In re Schafer,* 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. The focus of the "best interest" determination is upon the child, not the parent. R.C. 2151.414(C) expressly prohibits the court from considering the effect a grant of permanent custody would have upon the

---

[2] Although R.C. 2151.414(B)(1)(d) is clearly met, the trial court alternatively found that clear and convincing evidence exists under (B)(1)(a)– the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

This Court will *not* engage in any unnecessary analysis where it is clear that the child was in RCCSB's temporary custody for more than 12 months of a consecutive twenty-two month period, even considering the two 30-day "trial" periods in September/October 2023.

parents. *N.B.*, ¶¶ 35-36, citing, *In re Awkal,* 85 Ohio App.3d 309 (8th Dist. 1994). Importantly, a child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *T.C.*, ¶ 54.

## ANALYSIS

**{¶24}** After a thorough review of the record, we find sufficient evidence that, while appellant made some minimal efforts to engage in the case plan after lengthy delay, she failed to substantially remedy the conditions that caused A.W. to be removed in the first instance. *A.W.*, ¶ 21. It is evident from the Magistrate's Decision that the trial court fully considered the factual issues and engaged in a rigorous analysis as required by Ohio law. Similarly, the permanent custody award is *not* against the manifest weight of the evidence. The Magistrate (and trial judge) **did not** clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed. To the contrary, significant evidence exists to support the award of permanent custody to RCCSB.

**{¶25}** Regarding best interest factors (1) and (3), the evidence demonstrates that although the child was familiar with and seemed bonded to appellant, the child has been with the foster family for an extensive amount of time, since November 4, 2021, minus two 30-day trial visitations. When A.W. was in the exclusive care of her parents from birth to 18 months, she did not do well. She was nutritionally deficient, her parents used substances of abuse, and her father engaged in acts of violence against appellant while appellant minimized such behaviors. When A.W. entered the foster home, she was nonverbal, lacked emotion, and was still eating baby food from a bottle mixed with PediaSure. These facts demonstrate appellant's lack of attention and effort to raise and support A.W. properly.

{¶26} The foster family quickly noticed the above issues and, unlike appellant or A.W's father, they referred A.W. to occupational, physical, and speech therapy. As a result of the therapy sessions, A.W. quickly improved in many areas. The testimony further demonstrates that A.W. is extremely bonded with her foster family, appears to thrive in their home, and is fully integrated into their family.

{¶27} Although the Magistrate found that the child is too young to express her wishes at age 3 as contemplated "best interest" factor (2), "her exceedingly happy and contented demeanor and the open love and affection she expresses for her foster family is clear and compelling evidence that the child wishes to remain." Magistrate's Decision at p. 12. The Magistrate was able to see A.W. and observe her demeanor. It was clear that A.W. was not only integrated into the foster family, but A.W. was happy, comfortable, and thriving in their home.

{¶28} Turning to factor (4), a child's need for a legally secure placement and whether it can be achieved without a grant of permanent custody, the evidence reveals that appellant continues to choose drugs over A.W. Indeed, during the October 25, 2023, unannounced visit, appellant tested positive for marijuana and cocaine. On October 31, 2023, A.W. herself tested positive for marijuana. Such positive screens are significant given that appellant began to achieve some of the case plan goals, to an extent that A.W. was permitted to stay at appellant's home for two 30-day "trial" periods. Again, these positive screens show appellant's lack of commitment to rectify the conditions underlying A.W.'s removal.

{¶29} Although appellant claims that her results may be inaccurate due to an alleged interaction with her prescription medications, there is insufficient evidence to

support the assertion. The toxicologist's testimony establishes that the lab properly tested the samples, and he authenticated the results at the hearing. Counsel had the opportunity to fully cross-examine the individual on this issue. Relatedly, A.W., a *toddler,* was also positive for marijuana after having stayed with her parents, both of whom have a lengthy drug history and contemporaneous positive results.

{¶30} It is significant that appellant - and A.W.'s father - waited almost one year after initial consultation and evaluation with Family Life Counseling to attempt the treatment and counseling goals set forth in the case plan. Appellant simply fails to take responsibility for her actions, she minimizes her husband's actions, and she demonstrates an unwillingness to remain on a path towards success. Contrary to appellant's assertion that the caseworker had "no concerns" with appellant, the caseworker in fact recommended that RCCSB be awarded permanent custody. The GAL similarly recommended permanent custody to RCCSB because it was in A.W.'s best interest.

{¶31} In the final analysis, clear and convincing evidence demonstrates that appellant's mental health and chemical dependency rendered her unable to provide an adequate permanent home for A.W. The Court of Appeals must not "reconsider" the trial court's decision and substitute its own judgment provided there is credible evidence in the record to support the trial court's conclusions. And, as noted above, the best interest analysis is focused on the child, not the parent. Accordingly, the trial court properly granted Appellant's motion for permanent custody. **Appellant's first and second assignments of error are overruled**.

{¶32} In the third assignment of error, appellant claims RCCSB did not make reasonable attempts to reunify the family. Appellant claims that RCCSB could have done

"more" by increasing visitation, updating professionals about case plan progress, and finding suitable kinship placement. Appellant's arguments are without merit. Notably, appellant did not raise her "reasonable efforts" argument in her objections to the Magistrate's Decision regarding permanent custody. It is raised for the first time on appeal. As such, the issue is waived unless appellant can demonstrate plain error. *In re B.F.*, 2021-Ohio-4251 at 923, ¶ 23 (3rd Dist) (citations omitted).

**{¶33}** The plain error doctrine may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, essentially challenging the legitimacy of the judicial process itself. *B.F., ¶* 24, citing *In re K.M.*, 2019-Ohio-4252 (4th Dist.), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Here, even though appellant desperately claims that RCCSB was somehow inept, it is appellant (and her husband) who failed to rectify the circumstances causing A.W.'s removal. Appellant fails to demonstrate plain error.

**{¶34}** Even assuming appellant somehow preserved this issue for appeal, RCCSB clearly fulfilled its obligations. Generally, the agency has the duty to make reasonable efforts to preserve or reunify a family unit, including preparing and maintaining a case plan to bring the children back home. See R.C. 2151.412; *Matter of D.D.,* 2023-Ohio-4147, ¶ 20. "When the state intervenes to protect a child's health or safety, '[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called "reasonable efforts." ' *In re B.F.,* 2021-Ohio-4251, ¶ 11, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28 (citations omitted).

**{¶35}** Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's needs to prevent the child's removal or to attempt reunification of a child removed. *In re H.M.K.*, 3d Dist. No. 16-12-15, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. No. L-11-1197, 2012-Ohio-1104, ¶ 30. An effort is reasonable where it is an honest, purposeful effort. *In re R.L.*, 2022-Ohio-1179, ¶31 (5th Dist.). Importantly, reasonable efforts do not equate to all available efforts otherwise there would always be an argument that one more service, no matter what, may have led to reunification. *In re B.F.*, 3d Dist. No. 11-21-04, 2021-Ohio-4251. What amounts to reasonable efforts will necessarily vary depending on the circumstances of each case. *Matter of D.D.,* ¶ 25.

**{¶36}** R.C. 2151.419(A)(1) requires the trial court to determine if the agency made reasonable efforts to return a child home and applies at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. *Id,* ¶ 21. Importantly, R.C. 2151.419(A)(1) *does not* refer to permanent custody hearings, such that it "does not apply in a hearing on a motion for permanent custody if the agency has established in earlier proceedings that reasonable efforts have been made. *Id.* at ¶ 43. Here, the trial court made numerous findings in earlier proceedings that the agency made reasonable efforts to reunify.

**{¶37}** Notwithstanding, the record belies appellant's assertions and in fact, demonstrates RCCSB' ongoing efforts. RCCSB established a detailed case plan, provided numerous references to seek counseling and treatment, followed up on appellant's progress through case management, facilitated and supported foster

placement, modified and facilitated visitation – even allowing two 30-day trial periods back in the home – and repeatedly made visits and performed drug tests.  The evidence presented to the trial court clearly establishes that RCCSB made reasonable efforts to prevent the continued removal of the child.

{¶38}  In the end, appellant failed to hold herself and A.W.'s father accountable, continued using drugs, and could not establish her commitment to A.W.  There is simply nothing in the record to suggest that RCCSB failed in its obligation to this family.  Accordingly, the third assignment of error is overruled.

## CONCLUSION

{¶39}  For the reasons above, appellant's first, second and third assignments of error are overruled in their entirety.  The judgment of the Richland County Court of Common Pleas is AFFIRMED.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.