[Cite as *In re S.B.*, 2025-Ohio-2685.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE S.B.                                    :

                                           No. 114693

A Minor Child                                 :

[Appeal by Mother, S.S.B.]                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** July 31, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Court Division
Case No. AD23914287

---

### *Appearances:*

Wargo Law, LLC, and Leslie E. Wargo, *for appellant*.


WILLIAM A. KLATT, J.:

{¶ 1} S.S.B., mother ("Mother") of the subject minor child, S.B., filed this appeal after the juvenile court granted the motion of the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") to modify temporary custody of S.B. to permanent custody. After a careful review of the record, we dismiss the appeal.

**Factual and Procedural History**

{¶ 2} Counsel appointed to represent Mother in this appeal has filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and requested leave to withdraw as counsel. In *Anders*, the Court held that where, after a conscientious examination of the case, appellate counsel is unable to find any meritorious issues for review, counsel may inform the court and request permission to withdraw from the case. *Id.* at 744. The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished to the indigent defendant and time allowed for him or her to raise any points that he or she chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds, it may grant counsel's request to withdraw and dismiss the appeal. *Id.* If this court determines that one or more legal points have merit, the defendant will be afforded counsel to argue the appeal. *Id.*

{¶ 3} Although *Anders* arose in a criminal context, this court has applied *Anders* in appeals involving the termination of parental rights. *In re D.H.*, 2025-Ohio-748 (8th Dist.); *In re J.P.S.*, 2023-Ohio-3151 (8th Dist.); *In re E.G.*, 2023-Ohio-2305, ¶ 25 (8th Dist.), citing *In re J.L.*, 2020-Ohio-5254, ¶ 35 (8th Dist.). In *In re J.L.*, we explained:

> Previously, former Loc.App.R. 16(C) set forth the specific procedure governing *Anders* briefs and motions to withdraw followed by this court. That rule was amended on February 1, 2019, and no longer includes any procedure for the filing of *Anders* briefs. However, as this court has previously stated, "the absence of a local rule governing *Anders* briefs does not prevent this court from accepting these briefs

nor from following the procedure the United States Supreme Court outlined in *Anders*." *Sims* at ¶ 7-14 (discussing "the duties of appellate counsel when filing an *Anders* brief and our duties when ruling on counsel's motion to withdraw on the grounds that the appeal would be frivolous" even in the absence of former Loc.App.R. 16(C), different Ohio appellate courts' views on *Anders* briefs and this court's decision that "until the Ohio Supreme Court resolves the split among the Ohio Appellate Districts regarding the application of *Anders*. . .we will continue to adhere to the procedures outlined in *Anders* pertaining to both counsel and the court when appointed appellate counsel files a motion to withdraw because an appeal would be wholly frivolous"); *see also State v. Lariche*, 2020-Ohio-804 ¶ 7 (8th Dist.).

*In re J.L.* at ¶ 36.

{¶ 4} In her brief on appeal, Mother's counsel stated that she had reviewed the record of the custody proceedings below, examined the relevant statutes and case law, and determined that the trial court did not commit any errors that prejudiced Mother. This court gave Mother the opportunity to file a pro se brief, but she did not do so.

{¶ 5} The record reflects that on December 27, 2023, CCDCFS filed a complaint alleging abuse, neglect, and dependency and requesting temporary custody be granted to CCDCFS. The complaint alleged that S.B. was born on August 11, 2023, and tested positive at birth for cocaine and PCP. The complaint alleged that S.B. was removed from Mother's custody on August 21, 2023, and had been in agency custody since then. The agency filed a complaint for temporary custody on the day of S.B.'s removal, August 21, 2023, but it could not be resolved within the statutory time period and was dismissed.

{¶ 6} The December 2023 complaint further alleged that Mother has a long-standing substance abuse problem, specifically related to cocaine and PCP,

which she has failed to address. Additionally, the complaint alleged that Mother has mental-health diagnoses for bipolar with schizoaffective disorder, post-traumatic stress disorder, anxiety, and depression, which require ongoing treatment, but Mother has not been consistently involved with mental-health treatment and does not participate in the recommended services.

{¶ 7} Further, the complaint alleged that Mother has four older children who were removed from her custody due in part to Mother's substance-abuse and mental-health concerns. Three children were committed to the legal custody of relatives and one child was committed to the permanent custody of the agency. Finally, the complaint averred that the alleged father failed to establish paternity.[1]

{¶ 8} The record reflects that S.B. was committed to the predispositional temporary custody of CCDCFS on December 28, 2023. On March 26, 2024, the juvenile court adjudicated S.B. abused, neglected, and dependent.

{¶ 9} On May 31, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. On December 2, 2024, the court held a hearing on this motion. Mother was not present at the hearing.

{¶ 10} Kimberly Palmer ("Palmer") testified that she was the agency worker assigned to this case. Palmer testified that paternity was not established. The agency introduced certified journal entries from the custody proceedings of Mother's four other children, and they were admitted as exhibits without objection.

---

[1] On August 22, 2024, the court granted the agency's motion to join alleged father, R.J., as a party. The record reflects that paternity was never established for R.J., and R.J. did not otherwise participate in the proceedings and is irrelevant to this appeal.

Palmer testified that Mother's previous involvement with the agency dated back to approximately 2015.

{¶ 11} Palmer testified that the agency became involved in this case because at the hospital when Mother gave birth to S.B., Mother admitted using cocaine, PCP, and alcohol, and the hospital notified the agency. Palmer testified that the main issues in this case were substance abuse, mental health, and housing. With respect to substance abuse and mental health, Palmer testified that CCDCFS made numerous referrals to Mother for those services. Palmer testified that Mother completed two or three assessments following 10 to 12 referrals that were made over the course of this case. Mother generally failed to engage with recommended services; she attended one session with a substance abuse treatment service before she stopped attending, she had not completed any of the substance-abuse programs that she was referred to, and she had not been providing drug screens for the agency despite being asked to do so.

{¶ 12} The record reflects that in June 2024, Mother was picked up by EMS and law enforcement after running in traffic and laying down in front of a city bus. Following this incident, Mother was hospitalized and medicated, but the agency did not have any additional information about Mother's medication or the incident.

{¶ 13} The record also reflects that Mother has not completed parenting services, and Palmer testified that the agency was unable to confirm Mother's housing situation. Palmer attempted to visit Mother at an apartment, but Mother

refused to let her inside; Palmer testified that there was debris blocking the door and a "foul stench" coming from the apartment.

{¶ 14} Palmer testified that Mother had been in intermittent contact with the agency, but it was difficult to contact her on a regular basis. Since July 2024, Mother had engaged in monthly visitation with S.B. Palmer testified that the agency worker previously assigned to the case described Mother's visitation as sporadic.

{¶ 15} Palmer testified that S.B. was placed with a foster family and was very bonded to the family. Beyond some stiffness that was being treated with physical therapy, S.B. had no special needs or diagnoses. Palmer testified that several relatives were explored as potential custodians for S.B. but ultimately were determined to be unsuitable.

{¶ 16} S.B.'s guardian ad litem ("GAL") recommended the agency receive permanent custody; no party cross-examined the GAL at the hearing.

{¶ 17} At the conclusion of the hearing, the court found that Mother had failed to show by clear and convincing evidence that she could provide a safe and stable permanent home for S.B. The court ultimately granted the agency's motion for permanent custody. In its corresponding journal entry, the court stated:

> Pursuant to R.C. 2151.414(B)(1)(a), the Court finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that the following apply: The child cannot be placed with either parent within a reasonable time or should not be placed with the parent. This factor is discussed as part of the (E) factors of R.C. 2151.414 below. No one has been identified as a possible father for the child.

The mother self-reported substance abuse at the hospital at the time of the child's birth. The child was committed to the pre-dispositional temporary custody of CCDCFS on or about December 28, 2023. The child was adjudicated neglected, abused and dependent and placed . . . in the temporary custody of the CCDCFS pursuant to an order journalized on March 27, 2024. A motion to modify temporary custody to permanent custody was filed on May 31, 2024.

In considering the best interests of the child, the Court considered the following relevant factors pursuant to 2151.414(D)(1): The interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and whether any of the factors in Division (E)(7)-(11) of this section apply in relation to the parents and child.

There is evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent:

(E)(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the Court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(E)(2) The chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year.

(E)(10) The alleged father has abandoned the child.

(E)(11) The parent has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove, that notwithstanding the prior termination, the parent can provide a legally secure placement and adequate care for the health, welfare and safety of the child.

. . .

The Guardian ad Litem for the child recommends that permanent custody is in the best interest of the child.

{¶ 18} This appeal followed.

**Law and Analysis**

{¶ 19} Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody "if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.*, 2023-Ohio-4703, ¶ 7. Further, because Mother has had her parental rights terminated in respect to several of S.B.'s siblings, Mother was required to demonstrate, by clear and convincing evidence, that "notwithstanding the prior termination, [she] can provide a legally secure placement and adequate care for the health, welfare, and safety of [S.B.]." R.C. 2151.414(E)(11). Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases," and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be

established.  *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 20} A juvenile court's decision under R.C. 2151.414 to award permanent custody of a child to an agency and terminate parental rights can be reviewed under either sufficiency-of-the-evidence or manifest-weight-of-the-evidence standards. *See In re T.T.*, 2024-Ohio-2914, ¶ 20 (8th Dist.).  In cases of abuse, neglect, and dependency, a trial court may enter a disposition of permanent custody of a child if it determines by clear and convincing evidence that the child cannot or should not be placed with either parent within a reasonable time and that permanent custody is in the child's best interest.  R.C. 2151.414(E); *In re D.E.*, 2025-Ohio-654, ¶ 9 (8th Dist.).  "'A juvenile court is only required to find that one of [the R.C. 2151.414(E)] factors is met in order to properly find that a child cannot or should not be placed with a parent.'"  *Id.*, quoting *In re Y.F.*, 2024-Ohio-5605, ¶ 43 (8th Dist.), citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.).

{¶ 21} Here, in accordance with R.C. 2151.414(E), the court made findings related to subsections (E)(1), (2), (10), and (11).  All of these findings were supported by the record.  Further, the court found that permanent custody was in the best interest of S.B. based on numerous statutory factors, including the relationship of S.B. with her parents and foster parents; S.B.'s custodial history; and the need for a legally secure permanent placement.  Following our independent review of the record, we find there is clear and convincing evidence in the record to support the juvenile court's determinations that the evidence was legally sufficient to support

the trial court's decision as a matter of law. We also do not find the juvenile court's decision to grant permanent custody to the agency to be against the manifest weight of the evidence.

{¶ 22} Further, Mother failed to present clear and convincing evidence that despite having had her parental rights terminated for siblings of S.B., she would be able "to provide a legally secure permanent placement and adequate care for the health, welfare, and safety of [S.B.]" as required under R.C. 2151.414(E)(11). In fact, Mother failed to appear at the hearing on the agency's motion and did not present any evidence, let alone clear and convincing evidence, to satisfy this requirement. The record reflects that Mother continues to struggle with substance abuse, mental health, and housing, and has taken little to no steps to address these issues.

{¶ 23} On this record, we agree with counsel that the appeal is wholly frivolous and without merit.

{¶ 24} The requirements set forth in *Anders* have been satisfied, and therefore, the appeal is dismissed and counsel's motion to withdraw is granted.

It is ordered that appellant pay the costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)