[Cite as *In re K.J.*, 2025-Ohio-4562.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                         )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: K.J.                         C.A. Nos.    31434, 31461
     K.L..                                31462, 31463,
     K.W.                                31464, 31471
     K.W.
     K.W.

                                   APPEAL FROM JUDGMENT
                                   ENTERED IN THE
                                   COURT OF COMMON PLEAS
                                   COUNTY OF SUMMIT, OHIO
                                   CASE Nos.   DN22-07-0607
                                              DN22-07-0608
                                              DN22-07-0609
                                              DN22-07-0610
                                                DN22-11-0972

DECISION AND JOURNAL ENTRY

Dated: October 1, 2025

---

CARR, Judge.

{¶1} Appellant, T.L. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her five minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of K.J., born September 8, 2014; K.L., born March 3, 2017; K.W., born September 15, 2019; K.W., born December 9, 2021; and K.W., born November 4, 2022. The father of K.J. is deceased and the father of K.L. did not participate in this appeal. The father of the K.W. children ("Father W.") filed a brief in support of Mother's appeal.

{¶3} CSB first became involved with Mother's family during June 2022, while Mother was pregnant with the youngest K.W. Mother initially agreed to work on a voluntary safety plan, but the plan became unworkable because of the conflicting work schedules of Mother and a paternal aunt who had agreed to monitor Mother's interaction with the children. CSB later filed complaints to allege that K.J., K.L., K.W., and K.W. were abused, neglected, and dependent because of their ongoing exposure to serious intimate partner violence perpetrated by Father W. against Mother; Mother's unstable mental health and abuse of illegal drugs; the unsuitability of the family home including a lack of electricity; and Mother's inability to otherwise meet the children's basic needs. CSB later filed an amended complaint, adding more specific allegations about domestic violence witnessed by the children and that Mother had recently tested positive for cocaine.

{¶4} On September 2022, by agreement of the parties, the trial court adjudicated the four oldest children dependent under R.C. 2151.04(B) and (C). The parties also agreed that the children would be placed in the temporary custody of CSB and that the case plan would be adopted as an order of the court. After the birth of the youngest K.W., the trial court adjudicated the child dependent under R.C. 2151.04(B), (C), and (D), and placed her in the temporary custody of CSB.

{¶5} The primary obstacle to Mother reuniting with her children in the case was her long-term abuse of methamphetamine and other substances. Mother was exposed to substance abuse throughout her life and admittedly began abusing drugs as a young teenager. According to Mother, the maternal grandmother and several of Mother's family members are long-term drug abusers. Mother informed the caseworker that she lacked family members and/or friends to encourage her to achieve and maintain sobriety, so the reunification services in this case focused on helping Mother develop a sober support system. The case plan required Mother to complete substance

abuse and mental health assessments and follow all treatment recommendations, submit to regular drug screening, and maintain stable income and housing.

{¶6} During the months after the trial court adopted the case plan, Mother engaged in mental health counseling and substance abuse treatment. In March 2023, she began participating in the juvenile court's Family Reunification through Recovery Court program ("FRRC"). During her FRRC involvement, Mother engaged in various services with Community Health Center ("CHC"), Community Support Services ("CSS"), Catholic Charities, and Meridian Health Care ("Meridian"). At CHC, Mother was diagnosed with depression and anxiety; moderate cocaine, cannabis, and amphetamine-type use disorders; and mild alcohol use disorder. Shortly after starting the FRRC program, Mother entered a residential substance abuse treatment program at CHC's Touchstone facility.

{¶7} Because Mother initially made steady progress in the FRRC program, the trial court granted CSB's request for a first six-month extension of temporary custody. Mother successfully completed the program at Touchstone, stepped down to intensive outpatient treatment, and began a 16-week aftercare program at CHC.

{¶8} By mid-August 2023, however, CHC records indicate that Mother was losing her motivation to stay sober and admitted to using alcohol and methamphetamine. Mother agreed to re-enter Touchstone's residential treatment program, but she left that program after one month against Touchstone's advice. Mother entered an intensive outpatient treatment program but did not actively participate and/or failed to show for most of her appointments for the next two months.

{¶9} Mother relapsed again during November 2023, so she entered Meridian for detoxification and a residential treatment program. After she successfully completed the Meridian program, Mother again engaged in treatment at Touchstone. She continued to make progress

toward sobriety, so the trial court granted CSB's motion for a second six-month extension of temporary custody.

{¶10} After Mother was released from Touchstone, she engaged in an aftercare program at CHC. During April 2024, Mother tested positive for alcohol. Despite that apparent one-time slip, CSB and the guardian ad litem believed that Mother was moving toward sustained sobriety. On April 16, 2024, the parties agreed that Mother could progress to unsupervised, overnight parenting time with the children.

{¶11} At the end of May 2024, the children were scheduled to visit Mother's home for an unsupervised weekend visit. CSB apparently took an oral swab from Mother shortly before the visit and sent it to Forensic Fluids Laboratories for testing. While the children were at Mother's home, CSB received the results of the drug test. Mother had tested positive for methamphetamine and amphetamine, so the agency immediately cancelled the visit and removed the children from her home. CSB terminated Mother's unsupervised visits and allowed only supervised visits with the children for the remainder of the case.

{¶12} On June 25, 2024, CSB moved for permanent custody of all five children. Mother gradually withdrew from her reunification services. Although she tested negative for drugs during June and July, she admitted to a relapse on methamphetamine in August 2024. On October 2, 2024, the trial court unsuccessfully discharged Mother from the FRRC program due to noncompliance.

{¶13} By November 2024, Mother was no longer engaged in services with CSS, CHC, or Catholic Charities. Her peer recovery coach at Catholic Charities expressed disappointment that Mother had been actively engaged in mental health and peer support services earlier in this case, but her contact with the coach later became "very, very spotty[.]" Mother did not re-engage in any

case plan services prior to the permanent custody hearing. She informed the guardian ad litem that she was trying to stay sober on her own, but Mother repeatedly tested positive for methamphetamine during November and December 2024.

{¶14} The permanent custody hearing was held before a visiting judge on February 18, 2025. Through her trial counsel, Mother opposed CSB's motion, but did not file an alternative dispositional motion. Mother admitted that she was not prepared to provide the children with a suitable home. This case was well over two years old by that time, so the trial court had no authority to grant another extension of temporary custody. *See* R.C. 2151.415(D)(4).

{¶15} After the hearing, the trial court determined that CSB had supported its permanent custody motion with clear and convincing evidence. It terminated Mother's parental rights and placed these five children in the permanent custody of CSB. Mother appeals and raises two assignments of error.

II.

### ASSIGNMENT OF ERROR I

THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT MOTHER [WAS] NOT COMPLYING WITH HER CASE PLAN.

{¶16} Mother's first assignment of error is that the trial court's finding on the first prong of the permanent custody test was not supported by sufficient evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent

custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶17} This Court's review under the sufficiency of the evidence standard requires us to "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *In re Z.C.*, 2023-Ohio-4703, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 470 (1954). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross*, 161 Ohio St. 469, at paragraph three of the syllabus.

{¶18} Mother does not dispute the trial court's best interest determination, but challenges only the trial court's finding on the first prong of the permanent custody test. The trial court found that the first prong of the permanent custody test was satisfied because the children could not or should not be returned to Mother's custody because she had "failed continuously and repeatedly to substantially remedy the conditions" that had caused the children's initial and ongoing removal from their home. R.C. 2151.414(B)(1)(a); 2151.414(E)(1).

{¶19} CSB argues on appeal that any error in the trial court's finding under R.C. 2151.414(E)(1) was harmless because the court also made an alternative "12 of 22" finding on the first prong of the test. *See* R.C. 2151.414(B)(1)(d). This Court has held that R.C. 2151.414 requires that the trial court make "explicit findings" on the two prongs of the permanent custody test. *In re T.C.*, 2008-Ohio-2249, ¶ 11 (9th Dist.), citing *In re M.B.*, 2004-Ohio-597, ¶ 8-10 (9th Dist).

{¶20} Although CSB alleged the "12 of 22" ground in its permanent custody motion, the trial court made no explicit finding on the "12 of 22" ground in its permanent custody judgment. In its recitation of the facts of the case, the trial court's judgment merely refers to the fact that two six-month extensions of temporary custody had been granted. Although the fact that temporary custody had been extended twice was relevant to CSB's "12 of 22" allegation, the court's mere reference to that fact did not constitute an "explicit finding[]" that CSB had established the "12 of 22" ground under RC. 2151.414(B)(1)(d). This court will not determine whether the trial court could have found the "12 of 22" ground based on the evidence before it. To make such a finding in the first instance would usurp the role of the trial court and exceed our role as a reviewing court. *See In re M.B.*, 2004-Ohio-597, at ¶ 9-10 (9th Dist.).

{¶21} This Court also considers the context and language of the trial court's entire judgment entry, including its use of boldface to emphasize a different basis for the trial court's first prong finding. It is clear from the trial court's judgment that it made only one explicit finding on the first prong of the permanent custody test: that the children could not or should not be returned to Mother's custody under R.C. 2151.414(B)(1)(a) because Mother had failed to remedy the conditions that had caused the children's ongoing removal from the home under R.C. 2151.414(E)(1). Therefore, this Court will review the evidence to determine whether that finding was supported by clear and convincing evidence.

{¶22} As already set forth in detail above, the evidence was not disputed that Mother did not resolve her ongoing substance abuse problem, the primary reason that caused the ongoing removal of her children. Over a period of more than two years, Mother engaged in substance abuse services, would achieve a brief period of sobriety, but then repeatedly relapsed after she left residential and intensive outpatient treatment. After CSB moved for permanent custody, Mother

stopped engaging in case plan services altogether. Throughout the three months before the hearing, Mother continued to regularly use methamphetamine. An exhibit admitted during the hearing demonstrated that Mother had tested positive for methamphetamine as recently as two weeks before the hearing. During her own testimony, Mother admitted that she had also used methamphetamine just three days before the hearing.

{¶23} Mother does not directly dispute any of the facts summarized in this opinion about her failure to maintain sobriety. Instead, she attempts to discredit the testimony of several of CSB's witnesses by pointing to perceived shortcomings in their testimony. Specifically, Mother challenges (1) certain testimony of the Forensic Fluids scientist about Mother's drug test results; (2) the testimony of Mother's "parenting coach" that she did not offer Mother parenting classes and appeared to be confused about the level of her own education; and (3) the testimony of certain witnesses who were unable recall the specific dates of certain events. As will be explained below, Mother's challenges to these witnesses are unfounded.

{¶24} Mother correctly asserts that the Forensic Fluids scientist briefly testified that it is not possible to discern, without further testing, whether a positive drug test for amphetamine resulted from a person's use of Adderall or methamphetamine. He further testified, however, that Mother had repeatedly tested positive for both amphetamine and methamphetamine. He explained that the presence of amphetamine may result from a person's use of methamphetamine or another drug, but that no other drug would cause a positive screen for the presence of methamphetamine. As methamphetamine was Mother's primary drug problem and the Forensic Fluids records demonstrated that Mother continued to test positive for methamphetamine, Mother has failed to discredit the scientist's testimony about her positive drug screens.

{¶25} Next, Mother challenges the testimony of a witness she identifies as a "parenting coach" who did not offer Mother parenting classes. According to the record, this witness identified herself as Mother's transition specialist at CSS, not as a parenting coach. Her role was to help Mother obtain housing and transition back to independent living after she completed residential drug treatment. The witness worked with Mother until Mother stopped communicating with her during May 2024. Aside from the witness being asked whether she provided Mother with parenting classes, there is no other reference to parenting classes in the record. The case plan did not require Mother to engage in parenting classes, and the trial court did not fault her for failing to do so. Therefore, the fact that this witness did not offer Mother parenting classes does not undermine any of her testimony.

{¶26} Mother also mischaracterizes an answer given by this witness near the beginning of her testimony. In response to a question about her training, the transition specialist responded that she had a "Bachelor, Mas -- Associate's Degree in Applied Science." That testimony appears to demonstrate only that the witness was nervous or, for some other reason, misspoke while answering the question. This testimony did not demonstrate, as Mother asserts, that the witness did not know what specific degree she held or that she "didn't even seem to know the difference."

{¶27} Finally, Mother faults a few of the agency's witnesses for being unable to recall the date that Mother was terminated from the FRRC program, exactly when a witness last saw Mother, and when Mother had one of her drug relapses. Mother has failed to demonstrate that their inability to recall these specific dates undermined their testimony. The dates were either already set forth in the record or not material to the agency's case. The undisputed evidence before the trial court established that Mother engaged in substance abuse treatment off and on during this case. Despite being provided with case plan services for more than two and a half years, Mother relapsed and

used methamphetamine multiple times; was terminated from the FRRC program for noncompliance on October 2, 2024; and stopped engaging in case plan reunification services and continued to use methamphetamine throughout the three months leading up to the final hearing. Mother admitted that she continued to use methamphetamine and was not engaging in drug treatment or sober support services. Clear and convincing evidence demonstrated that Mother "failed continuously and repeatedly to substantially remedy the conditions" that had caused the children's initial and ongoing removal from their home. R.C. 2141.414(B)(1)(a); 2151.414(E)(1).

{¶28} Mother has failed to demonstrate that the trial court's permanent custody judgment was not supported by sufficient evidence. Her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT INITIALLY DENIED LEAVE TO APPEAL THE CASES OF [TWO OF THESE CHILDREN] WHERE THERE WAS CONFUSION SURROUNDING THE NON-SEQUENTIAL CASE NUMBERS AND SIMILARLY-INITIALED NAMES, COUPLED WITH THE LACK OF PROOF OF SERVICE.

{¶29} Mother's second assignment of error is that the trial court erred in failing to perfect appeals in each of her children's cases. In the trial court, each child's case was assigned a distinct trial court case number. In attempting to perfect an appeal from each child's case, there was initial confusion because Mother's trial counsel first filed a notice of appeal that identified some of the children's names and only one of the five trial court case numbers. Mother later filed a pro se notice of appeal that omitted one of the five trial court numbers. Ultimately, however, Mother's appellate counsel filed a corrected notice of appeal. This Court accepted Mother's appeals from the termination of parental rights pertaining to each of her five children. Because any error by the trial court did not preclude Mother from appealing from each of her children's cases, her second assignment of error is overruled.

III.

{¶30}  Mother's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ALISA BOLES, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

JASON D. WALLACE, Attorney at Law, for Appellee.