[Cite as *In re S.I.*, 2025-Ohio-4946.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN RE S.I. | Case No. 2025CA0011 |
|  | <u>Opinion And Judgment Entry</u> |
|  | Appeal from the Coshocton County Common Pleas Court, Juvenile Division, Case No. 20233017 |
|  | Judgment:   Remanded |
|  | Date of Judgment Entry: October 29, 2025 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

**APPEARANCES:** DIANA DUDGEON, for S.I.; RICHARD D. HIXSON, for Father-Appellant; KATELYNN R. DAVIS, for Coshocton County JFS; and ANGELA SIANJINA, Guardian ad Litem.

OPINION

*Montgomery, J.*

{¶1}   Father-Appellant ("Appellant") appeals from the Judgment Entry of the Coshocton County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody to Coshocton County Department of Job and Family Services.   For the reasons below, we remand to the trial court for further proceedings consistent with this opinion.

## STATEMENT OF THE CASE AND RELEVANT FACTS

{¶2}   On October 25, 2023, Coshocton County Department of Job and Family Services ("JFS") requested and received an ex parte order placing the minor child, S.I. ("the child") in JFS' emergency temporary custody.  On October 26, 2023, JFS filed a Complaint alleging that the minor child was dependent, neglected, and abused and a Motion for pre-dispositional interim orders.[1]  That same day, the child's mother appeared remotely, and Appellant appeared in person for the shelter care hearing.  The Court found that probable cause existed for the child to remain in JFS' emergency temporary custody due to mother's umbilical cord drug screen results being positive for amphetamine, methamphetamine, and Delta-9 THC.  The court also found that the parents lacked the ability to meet the child's basic needs, and that the child was at risk of harm if he remained in the parents' care and control.  The Court placed the child with foster parents who previously adopted the child's two siblings.

{¶3}   On November 6, 2023, neither mother nor Appellant appeared at the pre-dispositional hearings.  The child remained in JFS' emergency temporary custody and continued placement with the foster parents and two siblings.  On November 15, 2023, Appellant appeared for the adjudicatory and dispositional hearing.  The child was found to be dependent, neglected, and abused as to mother, and was found to be dependent as to Appellant.  On December 13, 2023, JFS filed its initial case plan.[2]

---

[1] Early in the case, Appellant was referred to as "alleged father" because paternity had not yet been established.  However, on December 21, 2023, genetic testing proved that Appellant was in fact S.I.'s biological father.

[2] Two additional JFS case plans were filed – one on February 20, 2024, to add Appellant as the father, and one on October 15, 2024.

**{¶4}** A second case plan was filed on or about February 20, 2024, and said plan added Appellant after he was established as the child's biological father. That case plan states:

Appellant has a history of drug use and felony drug possession, leaving him on community control for 3 years. Terms of that community control are drug and alcohol services at Riverside Recovery. He was not compliant with services during the month of December 2023 and relapsed on Methamphetamines in January of 2024. He attempted to tamper with drug screen for court, breaking the terms of his community control and now he is currently incarcerated at Coshocton County Sheriff's Office. [Appellant] is unable to provide for [the child] with his current life circumstances.

*See Motion for Permanent Custody*, Exhibit 10.

**{¶5}** Part of the case plan requires Appellant to obtain and maintain sobriety, provide a drug-free living environment, submit to random drug screens, continue services at Riverside Recovery, and follow all treatment recommendations, including mental health. It further stated that Appellant needed to provide stable housing, stable income, and stable employment to meet the child's basic needs, as well as ensure the child is not exposed to harmful relationships or drug use. JFS had concerns with Appellant due to his history of drug use and criminal history, including domestic violence. Appellant had four (4) felony convictions since 2017.

**{¶6}** Nearly one year after the ex parte motion for emergency temporary custody, on October 15, 2024, JFS filed a Motion for Permanent Custody ("PC"). On October 16, 2024, mother failed to appear at the "annual court review" and Appellant's counsel waived

Appellant's appearance. Mother had not participated in the case plan at all and Appellant, who opposed JFS' Motion for PC, had been incarcerated since February 9, 2024, for drug possession and tampering with evidence convictions.

{¶7} On December 20, 2024, mother and Appellant appeared for the PC hearing. Two witnesses testified – JFS caseworker Allison Adkins ("Ms. Adkins") and Appellant. JFS also offered Exhibits 1-15 which were admitted into evidence without objection. Mother's counsel represented that mother agreed to JFS' Motion for PC. Upon further questioning by the court, mother acknowledged and indicated that she fully understood that she would lose and be forever divested of her parental rights regarding S.I. Mother stated on the record that PC to JFS was in S.I.'s best interest.

{¶8} On behalf of JFS, Ms. Adkins testified that Appellant had not completed the case plan objectives despite opportunity and assistance from JFS. Ms. Adkins testified she completed three (3) face-to-face visits with Appellant, and one phone call, while he was incarcerated. Ms. Adkins testified Appellant stated he did not want his son to be raised by an Amish family and only asked about the child one time, and if he was going to have Appellant's last name. Ms. Adkins stated although Appellant was incarcerated, services were available to him, such as the "Harvest Drug and Alcohol Recovery Program," that would have been consistent with his case plan. Appellant responded that there was a long waiting list for the program, and that he was working on his GED. Ms. Adkins further testified that Appellant could not demonstrate future housing or income/employment with any certainty for when he was released from prison.

{¶9} Importantly, Ms. Adkins testified Appellant was essentially a stranger to the child and did not have a bond with him. The child was bonded to his foster parents and

two siblings and was doing well in their home.  The foster parents were willing and wanting to adopt the child in the future.  Ms. Adkins did not believe that Appellant could provide a safe and stable home for the child and did not believe that he actively worked on his case plan or demonstrated real progress.  Ms. Adkins stated that if Appellant was released in March 2024, it would not be sufficient time to work towards reunification with the two-year mark being in October, when the agency could file for PC under the 12 out of 22 months section of R.C. 2151.414(B)(1).

{¶10}  The trial court took the matter under advisement.  On April 25, 2025, the trial court issued its Decision and Judgment Entry granting PC to JFS.  Appellant timely filed the instant appeal.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY WITHOUT MAKING A FINDING UNDER R.C. 2151.414(B)(1)."

"II. THE TRIAL COURT ERRED WHEN IT FOUND THAT FATHER FAILED CONTINUOUSLY AND REPEATEDLY TO SUBSTANTIALLY REMEDY THE CONDITIONS CAUSING S.I. TO BE PLACED OUTSIDE THE HOME NOTWITHSTANDING REASONABLE CASE PLANNING AND DILIGENT EFFORTS BY THE AGENCY."

## STANDARD OF REVIEW

{¶11}  Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. *In re A.W.,* 2024-Ohio-5791, ¶ 15. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will

produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶12}** "A reviewing court will not reverse a trial court's judgment in a permanent custody case unless it is against the manifest weight of the evidence." *In re V.C.*, 2024-Ohio-5153, ¶ 23, citing *In re C.S.*, 2019-Ohio-5109, ¶ 21 (4th Dist.). If the children services agency presented "competent and credible evidence" upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, ¶ 55 (4th Dist.). Further, "[w]here the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990) (other citations omitted).

**{¶13}** Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. *Matter of A.H.*, 2024-Ohio-4694, ¶¶ 30-31 (5th Dist.). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). Credibility determinations are best suited for the trial court and are "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 1997-Ohio-260;

*see also*, *In re Christian*, 2004-Ohio-3146 (4th Dist.); *In re C.W.*, 2004-Ohio-2040 (2d Dist.).

**{¶14}** In conducting this deferential review, the court remains mindful that "the right to raise a child is an 'essential' and 'basic' civil right." *Matter of T.C.,* 2020-Ohio-882, ¶ 35; *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). A parent has a fundamental liberty interest in the care, custody, and management of his or her child and an essential and basic civil right to raise his or her children. *Id.,* at 156. That right, however, is not absolute. "The natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *Matter of R.M., Jr.*, 2018-Ohio-395, ¶ 23 (5th Dist.) quoting, *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). When a court determines whether to permanently terminate parental rights, the court must grant the affected parent "every procedural and substantive protection the law allows." *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).

## ANALYSIS

**{¶15}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency; and that one of the following applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of

the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     The child is abandoned;

(c)     The child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; * * *

(e)     The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶16}  Thus, R.C. 2151.414(B) establishes a two-pronged analysis that the trial court must apply when ruling on a motion for permanent custody.  *In re T.J.,* 2024-Ohio-110, ¶ 14 (5th Dist.); *In re A.M.,* 2020-Ohio-5102, ¶ 18. First, the court must find by clear and convincing evidence "that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies." *Id.* And second, the court must find by clear and convincing evidence that the grant of permanent custody is in the best interest of the child. *Id.*

{¶17}  Relevant here, R.C. 2151.414(B)(1)(a), PC may be granted if the child cannot or should not be returned to the parent because the parent has failed continuously and repeatedly to substantially remedy the conditions that caused the child's removal.  *In re K.J.,* 2025-Ohio-4562 (9th Dist.).  R.C. 2151.414(E) mandates that before making the determination that the child cannot or should not be placed with either parent within a

reasonable time, the court must consider all relevant evidence. *See* R.C. 2151.414(E). *Id.*, ¶ 19. In turn, R.C. 2151.414(E) expressly states that if the court makes even one finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. As such, a trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any <u>one</u> of the R.C. 2151.414(E) factors. *Id.*; *see In re William S.*, 1996-Ohio-182; *In re S.B.*, 2025-Ohio-2685, ¶ 17 (8th Dist.).

{¶18} Once the court makes the appropriate finding under R.C. 2151.414(B)(1), it generally turns to whether PC is in the best interest of the child. In determining the best interest of the child, R.C. 2151.414(D) mandates the trial court consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶19} The court must consider each factor enumerated in R.C. 2151.414(D), as well as any other relevant factors, and no one factor is given greater weight than the others. *In re Schafer,* 2006-Ohio-5513. A juvenile court does not need to specifically list or discuss in its Entry each of the best-interest factors to meet the mandate that it "consider" the factors in R.C. 2151.414(D). *A.M.*, ¶ 42. However, it must appear from the

record that the trial court did in fact consider the factors listed as well as any other relevant factor. *Id.* (holding that although not required, it is preferable for a juvenile court to provide some discussion or analysis of the best-interest factors to aid in appellate review and to increase confidence in its decision; because the record before it demonstrated that the magistrate and the juvenile court did consider the statutory factors, the court affirmed).

**{¶20}** Importantly, the focus of the "best interest" determination is upon the child, not the parent. R.C. 2151.414(C) expressly prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *N.B.,* ¶¶ 35-36, citing, *In re Awkal,* 85 Ohio App.3d 309 (8th Dist. 1994). Importantly, a child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *T.C.,* ¶ 54.

**{¶21}** Importantly here, Appellant does not dispute the trial court's best interest determination. Rather, Appellant's first assignment of error claims the trial court failed to make any specific finding under R.C. 2151.414(B)(1).[3] We agree. JFS filed the Motion for PC asserting three potential subsections, R.C. 2151.414(B)(1)(a), (b), and/or (e). In its Judgment Entry granting PC, the trial court states as follows:

1.      JFS has met its burden of proof as the testimony and exhibits offered by JFS prove by clear and convincing evidence, the following as set forth in ORC 2151.414(B)(1):

2.      The Court finds, "in accordance with ORC 2151.414(E)(1), that following the placement of the Child outside the Child's home and notwithstanding reasonable case planning and diligent efforts by the

---

[3] In his second assignment of error, Appellant argues that the trial court erred in finding that he repeatedly failed to substantially remedy the conditions for which the child was removed.

agency to assist the parents to remedy the problems that initially caused the Child to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the Child to be placed outside the Child's home."

*Judgment Entry*, April 23, 2025, pp. 3-4.

{¶22} The court did not specifically "find" that any applicable subsection of R.C. 2151.414(B)(1) applied. Although the court states that the parents "failed continuously and repeatedly to substantially remedy the conditions causing the Child to be placed" outside the home under (E)(1), it simply did not connect that to a specific finding under (B)(1)(a) through (e) and this Court may not extrapolate from the Judgment Entry and make its own finding on appeal. *See, In re K.J.*, 2025-Ohio-4562, ¶ 20 (9th Dist.) (the trial court made no explicit finding under the first prong of R.C. 2151.414(B)(1) and to make such a finding in the first instance on appeal would usurp the role of the trial court); *In re D.K.*, 2012-Ohio-2605, ¶ 11 (9th Dist.) (stating it is not the role of an appellate court to act as a fact finder, weighing evidence and reaching initial legal conclusions), citing *In re E.T.*, 2005-Ohio-6087, ¶ 14 (9th Dist.) (determining that an appeals court cannot enter a finding under Section 2151.414(E) if it was not made in the first instance by the trial court); *In re M.B.*, 2004-Ohio-597, ¶ 8-10.

{¶23} Because the trial court did not make the requisite finding(s) under R.C. 2151.414(B)(1), **we sustain Appellant's first assignment of error.** The lack of required findings in the trial court's order makes that order incomplete. *In re Arnold*, 2006-Ohio-2794, ¶ 9 (3d Dist.) (noting that the appropriate time for determining if the findings were correct is after a complete order is rendered). As such, we must reverse and remand to

the trial court for further proceedings. Thus, on remand, the trial court should clearly state the applicable statutory provisions, as well as its specific findings based on the evidence presented.

**{¶24}** Importantly, the trial court does not need to hold a new evidentiary hearing and may make proper findings based on the previous record. *In re Arnold*, 2006-Ohio-2794; *In re D.B.*, 2007-Ohio-5391, ¶¶ 15, 20 (12th Dist.) (finding that the juvenile court's failure to expressly make its best interest determination under "the clear and convincing standard" as required under R.C. 2151.414(B) constituted reversible error; matter was remanded to make the proper findings required under R.C. 2151.414 based on the previous record); *In re Belanger*, 2002-Ohio-4956 (11th Dist.) (holding that although the record demonstrated PC was in best interest of the child, the juvenile court's failure to fully discuss the factors under R.C. 2151.414(B)(1) required reversal but a new evidentiary hearing was not required). Because we must remand to the trial court for further proceedings, **we decline to address Appellant's second assignment of error** at this time.

## CONCLUSION

**{¶25}** Because we conclude that the trial court failed to make the required findings under R.C. 2151.414(B)(1), Appellant's first assignment of error is sustained. We remand the matter to the trial court for further proceedings consistent with this opinion. We decline to address Appellant's second assignment of error.

**{¶26}** For the reasons stated in our accompanying Opinion, the judgment of the Coshocton County Court of Common Pleas, Juvenile Division, is hereby vacated and the case is remanded with instructions.

**{¶27}** Costs divided equally between the parties.

By: Montgomery, J.

Baldwin, P.J. and

Gormley, J. concur.